UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

BLAKE CRETACCI,            )
                           )
    Plaintiff              )     No. 4:19-cv-00055-SKL
                           )
v.                         )
                           )
MATTHEW HARE, et al.,      )
                           )
    Defendants.            )

# MEMORANDUM AND ORDER

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff Blake Cretacci alleges that, on August 18, 2018, he was assaulted by five guards (Defendants Matthew Hare, Tristan Collins, Steven Qualls, Joshua Thomas, and Cody Duke; collectively, "Defendants") while he was a pretrial detainee at the Coffee County Jail. He claims Defendants used excessive force in violation of his rights under the Fourteenth Amendment to the United States Constitution. Currently before the Court is Plaintiff's motion in limine [Doc. 61], seeking to exclude proof concerning certain criminal convictions and other jail incidents. Defendants filed a response [Doc. 62], and Plaintiff filed a reply [Doc. 68]. This matter is now ripe.

## I.     CRIMINAL CONVICTIONS

Plaintiff first moves to exclude evidence of his past criminal convictions in Tennessee and Arizona. He has three felony convictions from Arizona state court: two for possession of marijuana, and one for solicitation to commit forgery. He has two felony convictions from Arizona federal court: use of a firearm during a crime of violence, and money laundering. He has two misdemeanor convictions from a Tennessee state court: reckless endangerment and violation of the implied consent law.

Defendants do not object to the exclusion of evidence relating to Plaintiff's convictions for possession of marijuana, use of a firearm, reckless endangerment, and violation of the implied consent law. Accordingly, Plaintiff's motion in limine is **GRANTED** to the extent he seeks to exclude evidence of these convictions.

Defendants *do* object to the exclusion of evidence concerning Plaintiff's convictions for solicitation to commit forgery and money laundering. The solicitation to commit forgery conviction was entered on August 10, 1989, and Plaintiff was sentenced to three years of probation. The money laundering conviction was entered on August 28, 1995. Plaintiff was sentenced to 60 months for the money laundering conviction. According to Plaintiff, he was granted supervised release at some point, which was then revoked on December 8, 2003, at which time Plaintiff was sentenced to serve eight additional months in custody [Doc. 61 at Page ID # 831].

Federal Rule of Evidence 609 provides in relevant part:

> (a) In General. **The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:**
>
>> **(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:**
>>
>>> **(A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and**
>>>
>>> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
>>
>> (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement.

2

> **(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>
>> **(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect;** and
>>
>> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

(Emphasis added).

Over thirty years have passed since Plaintiff's conviction for solicitation of forgery. Approximately 15 years have passed since Plaintiff's last period of confinement ended related to the money laundering conviction. Accordingly, evidence of these convictions is admissible only if there are "specific facts and circumstances" demonstrating that the probative value of these convictions "substantially outweighs" their prejudicial effect. Fed. R. Evid. 609(b).[1] "Rule 609(b) creates, in effect, a rebuttable presumption that convictions over ten years old are more prejudicial than helpful and should be excluded." *United States v. Rodriguez*, 409 F. App'x 866, 869-70 (6th Cir. 2011) (citation omitted) (affirming exclusion of 14-year-old conviction for theft).

In *United States v. Sims*, the Sixth Circuit explained that "[w]hen stale convictions are offered for the purpose of impeaching a witness, they often shed little light on the present tendency

---

[1] Without any supporting evidence, Defendants suggest the record is not clear regarding whether these convictions/confinement periods are more than ten years old. The Court disagrees. The solicitation of forgery conviction was clearly entered on August 10, 1989, with Plaintiff ordered to serve a three-year suspended sentence [Doc. 61-1 at Page ID # 841]. The record also reflects Plaintiff was sentenced to 60 months for the money laundering charge [Doc. 61-2 at Page ID # 872]. The record does not reflect when he was put on supervised release, but it does show he was ordered to serve eight months for violating the terms of his supervised release on December 8, 2003 [*id.* at Page ID # 906], meaning his confinement related to this felony ended in August 2004. Defendant does not appear to challenge the authenticity of these records.

of the witness toward truthfulness and veracity." 588 F.2d 1145, 1148 (6th Cir.1978). The court concluded that evidence of convictions more than ten years old will "very rarely and only in exceptional circumstances" be admitted. *Id.* Rule 609(b) requires the Court to make an "on-the-record finding based on specific facts and circumstances that the probative value of the evidence substantially outweighs the danger of unfair prejudice."[2] *Sims*, 588 F.2d at 1149 (citation omitted). The court identified the following factors "which the judge should take into account":

    (1) The impeachment value of the prior crime.

    (2) The point in time of the conviction and the witness' subsequent history.

    (3) The similarity between the past crime and the charged crime.

    (4) The importance of the defendant's testimony.

    (5) The centrality of the credibility issue.

*Id.* (citation omitted); *see also Lovett v. Cole*, No. 1:11-cv-277, 2014 WL 5802666, at *1 (S.D. Ohio Nov. 7, 2014) (applying factors in civil case; excluding evidence of "nearly twenty-year-old criminal convictions").

    The Court finds that both convictions have some impeachment value. Plaintiff does not contest that money laundering and forgery are both crimes of dishonesty. He briefly argues that *solicitation* of forgery is not a crime of dishonesty. Solicitation of forgery requires proof that a person commanded, encouraged, or requested another person to engage in specific conduct that constitutes forgery, and that he acted with specific intent to do so. Ariz. Rev. Stat. Ann. § 13-1002. This is sufficient to show the conviction is relevant to Plaintiff's honesty and therefore has some impeachment value. Furthermore, Plaintiff's credibility will be a significant issue in this

---

[2] In *Sims*, the Sixth Circuit urged "trial judges to make such determinations after a hearing on the record." 588 F.2d at 1149. In this case, neither party has asked for a hearing, and the Court finds a hearing is not necessary for the Court to issue this ruling.

4

case. As both parties acknowledge, the proof regarding the alleged assault will largely boil down to Plaintiff's word against Defendants' word.

The remaining factors do not weigh in favor of admitting evidence of these convictions on the current record. The conviction for solicitation of forgery is particularly stale. Plaintiff's subsequent history does appear to contain several additional felonies. In addition to the two felony convictions for marijuana possession (1991 and 1992) and one for use of a firearm during a crime of violence (1995, with confinement ending 2004), mentioned above, Plaintiff states in his brief that he has "some more recent drug felonies that he is not moving to exclude." [Doc. 61 at Page ID # 835]. He also has the misdemeanor convictions from 2013 [Doc. 61-3]. However, none of these convictions would seem to involve conduct similar to forgery or money laundering, and there appears to be a significant gap in Plaintiff's criminal activity, from 2004 until 2013 when he received the misdemeanor convictions referenced above [*id.*]. Defendants also do not rely on the "more recent drug felonies" to argue that Plaintiff's subsequent criminal history makes the older convictions more probative. Further, there is no suggestion of any factual similarities between the old convictions and the relevant events in this case.

Defendants have failed to present specific facts to show that this is the exceptional case where such stale convictions are so probative that they outweigh the inevitable prejudice they will cause. Defendants' current arguments boil down to the fact that the convictions involve dishonesty, and that credibility will be a significant issue at trial. But Rule 609 contemplates that even crimes of dishonesty more than ten years old are only admissible if there are specific facts showing the probative value of the convictions substantially outweighs their prejudicial effect. This leaves the significance of Plaintiff's credibility as the only specific fact. And it cuts both

5

ways—on the one hand, facts related to credibility are highly relevant, but on the hand, there is a heightened danger of prejudice because the convictions are so stale.

Unless Defendants come forward with more specific facts as to why Plaintiff's convictions for solicitation of forgery and for money laundering are probative to the issues in this case, proof of these convictions is excluded from trial. If Defendants wish to attempt to introduce said evidence at trial for a reason not addressed herein, they are ORDERED to first raise the issue with the Court outside the presence of the jury.

## II. OTHER JAIL INCIDENTS

Plaintiff also moves to exclude evidence concerning "jail incidents" Plaintiff was involved in other than the August 18, 2018 incident at issue in this lawsuit. Plaintiff lists a number of incidents occurring between October 15, 2015, and June 28, 2019 [Doc. 61 at Page ID # 832-33]. Plaintiff argues the incidents are not admissible to prove his character, and further, that they "do not appear relevant for any other purpose." [*Id.* at Page ID # 835].

Federal Rule of Evidence 404 provides in relevant part:

> (a) Character Evidence.
>
>> (1) Prohibited Uses. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.
>>
>> . . . .
>>
>> (3) Exceptions for a Witness. Evidence of a witness's character may be admitted under Rules 607, 608, and 609.
>
> (b) Other Crimes, Wrongs, or Acts.
>
>> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

6

Case 4:19-cv-00055-SKL   Document 74   Filed 04/06/21   Page 6 of 12   PageID #: 1107

> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

District courts use a three-step process to determine whether potential character evidence is admissible under Rule 404(b):

> *First*, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second*, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Dunnican*, 961 F.3d 859, 874 (6th Cir. 2020) (emphasis in original) (quoting *United States v. Yu Qin*, 688 F.3d 257, 262 (6th Cir. 2012)).

The parties do not appear to contest that there is sufficient evidence the other acts in question actually occurred. The parties do disagree over the second and third steps: whether the evidence is probative of a material issue other than character, and whether the probative value of the evidence is substantially outweighed by the potential prejudice it would cause to Plaintiff.

Defendants argue Plaintiff's "misconduct record and his prior altercations with inmates and officers are probative of, and are offered to prove . . . the state of mind of each of the defendant officers during the subject incident." [Doc. 62 at Page ID # 980]. They contend that Defendants' state of mind/knowledge is relevant to Plaintiff's excessive force claim because it goes to show the reasonableness of their conduct:

> **If the defendant officers were aware of plaintiff's misconduct record and prior altercations while incarcerated, and this information helped to form a basis to assess the threat level that plaintiff presented, then knowledge of such history is certainly relevant to the inquiry as to whether the forced used against**

7

> **plaintiff was reasonable under the circumstances**. Thus, evidence of plaintiff's misconduct record and prior altercations in his jail incident reports are probative of material issues other than character and are admissible under Federal Rule of Evidence 404(b).

[*Id.* (emphasis added)].

As for the third step, Defendants argue the "misconduct record" is "highly probative" of their state of mind during the incident, substantially outweighing any prejudice toward Plaintiff.

Plaintiff argues that Defendants' position is that he attacked them first, and that they were responding essentially in self-defense. Under those circumstances, he argues, his prior conduct is irrelevant: either Defendants were acting in self-defense and therefore their actions are "morally righteous," or they are lying about self-defense and "it was wrong for them to assault him." [Doc. 68 at Page ID # 1054].

To establish a claim for the use of excessive force, a pretrial detainee "must only show that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). In determining whether Defendants' use of force was objectively reasonable, the jury must consider *all* of the relevant facts and circumstances known to them at the time of the encounter. *Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 528 (6th Cir. 2018) (Whether force used was excessive must be determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." (citation omitted)). The jury "must also account for the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Kingsley*, 576 U.S. at 397 (internal quotation marks and citation omitted).

The "threat reasonably perceived by the officer" is only one consideration "that may bear

8

Case 4:19-cv-00055-SKL   Document 74   Filed 04/06/21   Page 8 of 12   PageID #: 1109

on the reasonableness or unreasonableness of the force used." *Id.* at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). There are several additional considerations, including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; . . . and whether the plaintiff was actively resisting." *Id.* (citation omitted).

Considering the foregoing, Defendants' claim of self-defense does not negate the relevance of other information the officers were aware of when the altercation with Plaintiff took place as argued by Plaintiff. The Court finds, however, that any incidents occurring *after* the August 18, 2018, incident cannot be relevant to Defendants' state of mind during the incident. As Defendants do not suggest there is any other non-character reason why these incidents might be relevant, the Court will **GRANT** Plaintiff's motion in limine as to any incidents occurring after August 18, 2018.

Likewise, any incidents of which Defendants were not aware could not have affected Defendants' states of mind during the August 18, 2018 altercation. The parties do not address this issue in their briefing. Plaintiff does attach a 61-page exhibit documenting the incidents listed in his brief. Of the incidents listed in Plaintiff's brief that occurred prior to August 18, 2018, only four appear to have involved Defendants.[3] The remaining incidents[4] appear not to have involved

---

[3] These include (1) the November 11, 2017 incident, which involved Defendants Collins and Hare [Doc. 61-4 at Page ID # 934]; (2) the June 24, 2017 incident, which involved Defendant Collins [*id.* at Page ID # 940]; (3) the February 10, 2017 incident, which involved Defendant Collins [*id.* at Page ID # 944]; and (4) the February 8, 2017 incident, which involved Defendants Collins and Duke [*id.* at Page ID # 946-47].

[4] These include the January 8, 2018 incident [Doc. 61-4 at Page ID # 920 & 930]; the September 9, 2017 incident [*id.* at Page ID # 936]; the July 10, 2017 incident [*id.* at Page ID # 938]; the April 30, 2017 incident [*id.* at Page ID # 942]; the January 14, 2017 incident [*id.* at Page ID # 949-57];

any of the Defendants, and Defendants do not address whether they were otherwise aware of the remaining incidents at the time of the August 18, 2018 altercation. The current record contains no proof whatsoever about whether and how Defendants were aware of these other incidents. Accordingly, because Defendants indicate they only plan to offer proof of these incidents to show their states of mind on August 18, 2018, the Court will **HOLD IN ABEYANCE** Plaintiff's motion as to the incidents not involving Defendants. *See Freeman v. Collins*, No. 2:08-cv-71, 2014 WL 325631, at *12 (S.D. Ohio Jan. 29, 2014) (excluding evidence of incidents which the defendant officer was unaware at the time of the alleged prisoner assault, where defendant officer sought to introduce this evidence "to demonstrate the reasonableness of the threat" the defendant officer perceived).

The Court will now address the four incidents that involved at least some of the Defendants. The Court finds the November 11, 2017 incident is probative of at some of the Defendants' states of mind at the time of the August 18, 2018 altercation. The incident report indicates officers searched Plaintiff's cell and discovered "contraband that resembled a shiv/shank." [Doc. 61-4 at Page ID # 934]. The report states the item was "a toothbrush with an inch long metal rod p[ro]truding from the handle of the toothbrush." [*Id.*]. Officers also discovered batteries. It certainly could be reasonable for Defendants Hare and Collins to be more wary of Plaintiff if they reasonably believed Plaintiff had previously possessed/concealed an item like the one described. It seems natural that a guard would think such an inmate could be more dangerous or difficult to subdue. *Bronzino v. Dunn*, 558 F. App'x 613, 615 (6th Cir. 2014) ("One relevant consideration is

---

the July 21, 2016 incident [*id.* at Page ID # 958]; the May 21, 2016 incident [*id.* at Page ID # 960]; the December 25, 2015 incident [*id.* at Page ID # 962]; the November 29, 2015 incident [*id.* at Page ID # 964]; the November 3, 2015 incident [*id.* at Page ID # 965]; the October 11, 2015 incident [*id.* at Page ID # 969].

the extent of the immediate threat posed by the defendant in light of the totality of the circumstances confronting the officer. . . . Bronzino's prior offenses were relevant to the officers' determination of how much force would be necessary to subdue Bronzino."); *Hubbard v. Gross*, 199 F. App'x. 433, 444 (6th Cir. 2006) ("*Ruvalcaba* stands for the point of law that officers can introduce evidence of previous encounters with a detainee if previous encounters would be relevant to show how much force is reasonable in a subsequent arrest." (citing *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995))). The Court further finds the probative value outweighs any potential prejudice.

The other three incidents are not obviously relevant for establishing Defendants' states of mind in reasonably perceiving Plaintiff as a threat. The June 24, 2017 incident report states Plaintiff had a verbal altercation with Defendant Collins when Defendant Collins informed Plaintiff that Plaintiff was getting a cell mate [Doc. 61-4]. Plaintiff "cuss[ed]" Defendant Collins, but there is no indication whether Plaintiff acted violently. *See Freeman*, 2014 WL 325631, at *12 ("Defendant Kaut's awareness of Plaintiff's reputation *for violence* is therefore relevant to the inquiry regarding the reasonableness of the threat he perceived and, in turn, to the evaluation of the reasonableness of the force he employed." (emphasis added) (citing *White v. Johnson*, No. 90-1008, 1991 WL 16014, at *1 (6th Cir. Feb. 8, 1991)).

The February 10, 2017 incident report states that Plaintiff was one of a number of inmates who had written on the walls of their prison cells and failed to clean the writing up despite being asked to do so. Those inmates were "sent to D Board for refusing to clean it up after asked [sic] by D Shift." [Doc. 61-4 at Page ID # 944]. The February 8 incident also may not show any violent or threatening behavior from Plaintiff. Officers (including Defendants Collins and Duke) discovered that Plaintiff was in possession of tobacco and "several pieces of brown cable with

11

copper wiring in the middle of each strand." [*Id.* at Page ID # 946]. Defendants have not explained how the cable may indicate violent or threatening behavior from Plaintiff.

The Court finds these incidents appear to be of limited relevance as far as establishing Defendants' states of mind and whether their actions were objectively reasonable during the August 18, 2018 altercation. There is a risk the jury could interpret the events as showing Plaintiff had the character of a troublemaker, and that Plaintiff was acting in conformity with that character trait during the incident with Defendants. Accordingly, the Court finds that proof of these incidents is more prejudicial than probative, and should be excluded on the current record.

### III. CONCLUSION

Plaintiff's motion in limine [Doc. 61] is **GRANTED IN PART, DENIED IN PART, AND HELD IN ABEYANCE IN PART** to the extent set forth herein. If Defendants intend to offer proof of any conviction or jail incident that the Court has determined should be excluded or held in abeyance on the current record, Defendants are instructed to first bring the proof to the Court's attention outside the presence of the jury.

SO ORDERED.

ENTER:

                                                s/ *Susan K. Lee*
                                                SUSAN K. LEE
                                                UNITED STATES MAGISTRATE JUDGE